UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LINDA SANTILLI | ) | CASE NO. 1:10CV1884 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE GEORGE J. |
| | ) | LIMBERT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION AND** |
| COMMISSIONER OF | ) | **ORDER** |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Linda Santilli seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] ECF Dkt. #1.  For the following reasons, the decision of the Commissioner is affirmed.

I.      **PROCEDURAL AND FACTUAL HISTORY**

On July 25, 2007, Plaintiff filed an application for DIB and SSI alleging disability beginning January 1, 2006.  ECF Dkt. #11-7 at 149-152.[2]  The SSA denied Plaintiff's application initially and on reconsideration.  ECF Dkt. #11-5 at 119-120, 121-122.  On July 11, 2008, Plaintiff filed a request for an administrative hearing.  ECF Dkt. #11-6 at 137.  On July 31, 2009, an ALJ conducted an administrative hearing *via* videoconference where Plaintiff, who was acting *pro se,* offered testimony.  ECF Dkt. #11-4 at 105-117.  On August 27, 2009, the ALJ issued a Decision denying benefits.  ECF Dkt. #11-3 at 76-92.  Plaintiff filed a request for review, which the Appeals Council denied.  ECF Dkt. #11-2 at 53-55.

---

[1]Plaintiff, who was acting *pro se*, only appealed the SSI determination, however, the ALJ considered both her DIB and SSI applications on appeal.

[2] Page numbers refer to "Page ID" numbers in the electronic filing system.

On August 25, 2010, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1.  On February 18, 2011, Plaintiff filed a brief on the merits.  ECF Dkt. #16. On May 9, 2011, Defendant filed a brief on the merits.  ECF Dkt. #19.  On June 3, 2011, Plaintiff filed her reply brief.

**II**.        **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

The ALJ determined that Plaintiff suffered from degenerative disc disease of the lumbar spine, obesity, and depression, which qualified as severe impairments under 20 C.F.R. §404.1520(c) and 416.920(c).  ECF Dkt. #11-3 at 79.  The ALJ further found that Plaintiff met the insured status requirements through June 30, 2013. *Id.* at 78.  The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1(20 C.F.R. 404.1525, 404.1526, 416.925, and 416.926). *Id.* at 82.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a wide range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), *Id.* at 84, and to remember and carry out simple instructions and perform simple tasks consistent with unskilled work. *Id.* at 84. Although the ALJ found that Plaintiff could not perform her past relevant work as a janitor, he determined that Plaintiff had not been under a disability as defined in the SSA and was therefore not entitled to DIB or SSI. *Id.* at 91.

**III**.        **STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

To be eligible for benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. §§ 423(a) & (d), 1382c(a).    Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.* An SSI claimant bears the ultimate burden of establishing that he or she is disabled under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir.1997).

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. §§ 404.1520(a) (4), 416.920(a)(4):

1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2.  An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R.  § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4.  If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5.  If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.    STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).  The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997).   Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is evidence that a reasonable

mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V.      ANALYSIS

At the hearing, the ALJ acknowledged that Plaintiff suffers from rheumatoid arthritis, a torn disc and three bulging discs in her back, swelling in her left foot (which was initially thought to be the result of a torn tendon, but, in fact, was the result of an extra bone in her foot that was surgically removed in September 10, 2007), leaky heart valves, depression, hypertension, and a "bad hip." ECF Dkt. #11-4, p. 111-112.  The ALJ further recognized that Plaintiff is short of breath if she carries a load of laundry up the basement stairs of her home.

Plaintiff testified that her left foot was still swollen as a result of the surgery, and, although her doctor characterized the swelling as normal, Plaintiff believes that it is not normal. *Id.* at 112. Her last job was janitorial work in June of 2008, which ranged from 17 to 35/40 hours a week depending on the time of year. *Id.* at 113.  Plaintiff testified that she had seen a neurologist just prior to the hearing and that she had been diagnosed with carpal tunnel syndrome in her left hand, and that the nerves and muscles on her left side are not responsive, and that the physician wanted to perform another MRI as he was concerned that her back problems had gotten worse, and that she may need surgery. *Id.* at 114.  Plaintiff further testified that she cannot afford her blood pressure medication, and that she does not take anything for her back pain so she cries at night and in the morning as a result of her back pain. *Id.* at 116.

In this appeal, Plaintiff asserts that the ALJ committed three prejudicial errors in reaching the conclusion that Plaintiff is not disabled.  First, Plaintiff argues that the ALJ incorrectly applied the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 ("grids"), at step five because the ALJ found that she had a significant non-exertional impairment.  Second, Plaintiff claims that the ALJ did not include all of the impairments established by the medical evidence in her RFC.  Finally, Plaintiff contends that the ALJ erred in his credibility determination when he failed to include limitations for chronic back pain in Plaintiff's RFC.

Normally, the Commissioner can meet his burden at the fifth step of his analysis by referring

-4-

to the grids, which dictate a finding of "disabled" or "not disabled" based on the claimant's exertional restrictions, age, education, and prior work experience. See *Born v. Secretary of Health & Human Servs.*, 923 F.2d 1168, 1173 (6th Cir.1990). The SSA created the grids to standardize disability determinations in the fifth step. *Heckler v. Campbell*, 461 U.S. 458, 461, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). The grids are found in the regulations and are a shortcut to eliminate the need for calling a vocational expert. *Hurt v. Secretary of Health and Human Servs.*, 816 F.2d 1141 (6th Cir.1987).

However, if a claimant has both exertional and nonexertional impairments, the ALJ is not permitted to rely on the grids alone to determine whether a disability exists. 20 C.F.R. pt. 404, subpt. P, app. 2, §200.00(e). On the other hand, "[a] mere allegation of a nonexertional limitation is not sufficient to preclude application of the grids;" the determining factor is "whether the alleged nonexertional impairment is severe enough to alter the conclusion that the claimant could do a full range of work at a designated level." *Cole v. Secretary of Health & Human Servs.*, 820 F.2d 768, 772 (6th Cir.1987); see *Kimbrough v. Secretary of Health & Human Servs.*, 801 F.2d 794, 796 (6th Cir.1986).

If a claimant's nonexertional limitations prevent him or her from doing the full range of work at the designated level, then the ALJ must come forward with some reliable evidence showing that there remains a significant number of jobs that the claimant can perform, taking into account the claimant's exertional and nonexertional limitations. See *Shelman v. Heckler*, 821 F.2d 316, 321-22 (6th Cir.1987). The ALJ may rely on the assistance of a vocational expert to make this determination. See *Damron v. Secretary of Health & Human Servs.*, 778 F.2d 279, 282 (6th Cir.1985).

Plaintiff contends that the ALJ erred when he "assumed that simple, routine tasks were synonymous with unskilled work." ECF Dkt. #16, p. 12. Plaintiff relies on several opinions in which courts have found the Dictionary of Occupational Title's reasoning levels are more indicative of whether the claimant capable of performing simple, repetitive tasks is able to perform a particular job. See *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir.1997); *Colon v. Astrue*, No. 06-4971, Doc. No. 14 at 23-24; Doc. No. 15 (E.D.Pa. Nov. 13, 2007); *Cooper v. Barnhart*, 2004 WL 2381515, *4

-5-

(N.D.Okla. Oct.15, 2004); *Hall-Grover v. Barnhart*, 2004 WL 1529283, *4 (D.Me. Apr.30, 2004). These courts reasoned that, although SVP (specific vocational preparation) and GED (general educational development) reasoning level both address intellectual requirements of an occupation, they have different applications, in that "[t]he DOT's explanation of SVP suggests that SVP relates to the vocational preparation required to perform a job and does not address whether a job entails simple tasks, while the ... GED reasoning level pertains to the complexity of a job." *Estrada v. Barnhart*, 417 F.Supp.2d 1299, 1302 n. 3 (M.D.Fla.2006); see *Cooper*, 2004 WL 2382525, at *4 (finding that a limitation to simple tasks appears more relevant to a job's reasoning level, than to its SVP level, which focuses on vocational preparedness). Plaintiff argues that, because some unskilled work (SVP one or two) actually involves a GED reasoning level three, the ALJ should not have relied upon the grid in reaching his conclusion that Plaintiff was capable of performing a wide range of light work.

The Sixth Circuit considered the limitations that confine a claimant to light work in *Allison v. Apfel*, 229 F.3d 1150 (Table)(6th Cir. 2000). In *Allison*, the claimant was limited to light work, with his non-exertional limitations restricting him to "simple, routine, repetitive work." *Id.* at *4. Allison argued that his non-exertional limitations significantly affected his ability to perform a full range of light work. The *Allison* Court wrote:

> We believe that the ALJ's qualification that Allison was limited to simple, repetitive, and routine tasks, within the category of light work, simply means that Allison is limited to unskilled light work. Indeed, the Social Security Administration regulations define unskilled work as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time" and gives the examples of "handling, feeding and offbearing" - in other words, simple, repetitive tasks. 20 C.F.R. § 404.1568(a). Moreover, the ALJ appeared to view simple, routine, repetitive work as synonymous with unskilled work. In analyzing Allison's nonexertional impairments, for example, the ALJ noted that Allison retains the capacity "to perform a broad range of unskilled work at both the sedentary and light levels of exertion." J.A. at 26 (emphasis added). Because Allison's nonexertional impairments only limited him to unskilled light work, the ALJ was correct to conclude that there remained a significant number of jobs in the economy that Allison could perform, since "[a]pproximately 1,600 separate sedentary and light unskilled occupations can be identified in eight broad occupational categories, each occupation representing numerous jobs in the national economy." 20 C.F.R. pt. 404, subpt. P. app. 2, § 202.00(a).

*Id.* The same is true in the case *sub judice*. The GED reasoning levels argument has been successfully raised in cases to successfully disqualify specific jobs identified by a vocational expert.

However, those cases are distinguishable because the GED reasoning levels argument does not have a similar prejudicial effect on the ALJ's findings. In other words, Plaintiff has not offered any evidence that a significant number of unskilled jobs at reasoning levels one and two do not exist. See *Shelman, supra.* (evidence that 85 percent of unskilled, sedentary occupations involve exposure to dust and other suspended particulates intolerable to persons afflicted with respiratory ailments sufficient to demonstrate error in ALJ's conclusion that claimant could perform wide range of sedentary work despite nonexertional limitation).  Therefore, Plaintiff's first argument must fail.

Turning to Plaintiff's second argument, she contends that the ALJ erred in concluding that her left tibial dysfunction was not severe, in failing to properly consider her obesity, which he classified as a severe impairment, and failing to mention her ear pain and tinnitus.  Plaintiff further contends that the ALJ did not include her moderate limitation in social functioning in her RFC.

According to the medical notes of Dr. Kim Choong, Plaintiff's treating physician, Plaintiff complained of pain in her left ankle in June of 2006, which Dr. Choong initially attributed to arthritis. ECF Dkt. #11-12, p. 344.  However, over the course of several appointments, her foot pain improved and an x-ray performed was negative. *Id.* at 344-349.  An arterial study was performed, no abnormal results were reported.  In August 2006, an MRI revealed no fracture or dislocation. ECF Dkt. 11-10, p. 292.  Plaintiff was scheduled to have the tendon tear repaired, however, due to a gap in the treatment notes from September 2007 to January 2009, which coincided with her janitorial job, the ALJ assumed that the tibial tendon tear was successfully repaired.  Based upon her testimony at the hearing, it appears that her foot and ankle problems had been resolved.  Although Plaintiff testified that some swelling remained, she did not state that the swelling limited her ability to stand or walk.

The ALJ also considered Plaintiff's obesity, and its effect on her back and leg problems, however, he relied upon medical notes from physical examinations that her gait, speech, motor strength and deep tendon reflexes were normal, to conclude that her weight did not prevent her from performing light work.  As noted by the Sixth Circuit, it is "a mischaracterization to suggest that Social Security Ruling 02–1p offers any particular procedural mode of analysis for obese disability claimants." *Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir.2006).  Rather, Ruling 02–lp

simply provides that "obesity, in combination with other impairments, 'may' increase the severity of the other limitations." *Id.* at 418 (quoting S.S.R. 02–lp).

Here, the ALJ specifically determined that plaintiff's obesity was a "severe" impairment. In *Young v. Comm'r of Soc. Sec.*, 2011 WL 2182869, *7 (N.D.Ohio), the court explained it is "up to the claimant to furnish medical and other evidence which the 'Social Security Administration can use to reach conclusions about [a claimant's] medical impairment and its effect on [his] ability to work on a sustained basis.' " *Id.* (quoting 20 C.F.R. § 404.1512(a)).  Given the absence of any evidence that plaintiff's obesity has increased the severity of her other limitations, the record demonstrates that the ALJ sufficiently considered plaintiff's obesity in formulating her RFC.  See *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir.2011); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir.2009).

With respect to Plaintiff's ear problems, she reported ear pain and ringing in her ears to Dr. Choong on approximately five office visits.  Her ear pain were sometimes accompanied by sinus drainage.  ECF Dkt. #11-13, p. 372.  However, there is no objective medical evidence to demonstrate that her ear problems were chronic, that there was any hearing loss, or that her ear problems affected her ability to perform basic work activities.  As a matter of fact, when Plaintiff was asked to describe her medical problems at the hearing, she did not mention any problem with her ears.

Plaintiff also contends that the ALJ erred when he did not include a limitation in her RFC reflecting her moderate difficulties in social functioning.  With respect to Plaintiff's ability to deal with other individuals in the workplace, the ALJ recognized that she worked in a public area throughout 2008, and that she shopped in stores and went out alone.  Moreover, in her function report, Plaintiff stated that she got along well with authority figures.   Furthermore, 20 C.F.R. Pt. 404, Subpt. P, App. 2, 201(h)(4)(i) recognizes that the primary work functions in the bulk of unskilled work relate to work with things (rather than data or people).  Consequently, the ALJ did not err in concluding that Plaintiff's moderate limitation in social functioning would not interfere with her ability to perform unskilled work.  Accordingly, Plaintiff second argument based upon the ALJ's failure to factor certain impairments into her RFC is not well taken.

Finally, Plaintiff contends that the ALJ failed to adequately assess her credibility.  An ALJ may discount a claimant's credibility where the ALJ finds contradictions among the medical records, claimant's testimony, and other evidence.  *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir.1997).  "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir.2001) , quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir.1972).  The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.2001).  The threshold for overturning an ALJ's credibility determination on appeal is considerable, such that, in recent years, the Sixth Circuit has expressed in unpublished opinions that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, No. 08–4706, 2010 WL 4810212 at *3 (6th Cir. Nov.18, 2010), citing *Heston v. Comm'r of Soc. Sec.*, *supra*, and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact." *Sullenger v. Commissioner of Social Security*, No. 07–5161, 2007 WL 4201273 at *7 (6th Cir. Nov.28, 2007).  Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.2d 234, 249 (6th Cir.2007).

The social security regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. § 416.929.  In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.; Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038-1039 (6th Cir. 1994); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986).  Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. *See id.*  Secondly, after an underlying physical or mental impairment is found to exist that could

-9-

reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities.  *See id.*

Here, there is evidence of mild degeneration of the spine, however, that evidence alone is insufficient to demonstrate Plaintiff's inability to perform light work.  When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p.  *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990).  These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors.  *Felisky*, 35 F.3d at 1039-40.  Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility should accord great deference to that determination.  *See Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1234 (6th Cir.1993).  Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence.  *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

The ALJ found that Plaintiff's medical condition could be expected to produce pain, but not the kind of severe pain that Plaintiff alleged.  It should be noted that the ALJ did not totally reject Plaintiff's allegations of pain, but rather, he determined that Plaintiff's allegations of the intensity, duration and limiting effects of his symptoms were not substantiated by the objective medical findings or other evidence in the record.  An ALJ is not required to accept a claimant's own testimony regarding his pain.  *See Gooch v. Secretary of Health and Human Servs.,* 833 F.2d 589, 592 (6th Cir. 1987).

In concluding that Plaintiff was not disabled, the ALJ relied upon the medical notes of Dr. Choong, as well as several specialists who treated Plaintiff's various problems.  An MRI was

-10-

performed on Plaintiff's back in the fall of 2006. Dr. Choong noted mild disc space narrowing at L3-4 and L4-5, and degeneration of the lumbar discs from L2-3 and L5-S1. There was a mild central disc bulge at L5-S1 with a small annular tear without canal stenosis, nerve root impingement or foraminal narrowing. There was a mild disc bulge in the caudal aspect of the right 4-5 neural foramen without significant nerve root impingement. There was mild arthrosis at the L4-5 level and less at the L5-S1 level. ECF Dkt. #11-12, p. 350. Dr. Choong's November notes indicate that Plaintiff saw a neurosurgeon who did not recommend surgery. *Id.* at 355.

Also in the fall of 2006, Plaintiff was examined by a cardiologist, Dr. Sola Srikantha, as a result of her tricuspid regurgitation. Plaintiff's exertional dyspnea (shortness of breath), fatigue and chest pain were attributed to her exposure to second hand smoke in her home and her weight. ECF Dkt. #11-17, p. 486. Dr. Srikantha recommended that Plaintiff prohibit her sons from smoking in the home and that she begin an exercise regimen. In a function report completed by Plaintiff in August of 2007, she reported back pain, but she was cooking and doing household chores, and working to support herself and her daughter. ECF Dkt. 11-8, p. 175-183.

Accordingly, in addition to the medical evidence, Plaintiff's own statement regarding her ability to perform household chores contradict her claims of debilitating pain. See *Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir.2001); see also 20 C.F.R. § 416.929(a) ("In determining whether you are disabled, we will consider ... your ... prescribed treatment, daily activities, efforts to work...."). Furthermore, Plaintiff performed janitorial work in 2008, during the time frame when she claims to have been disabled. Therefore, the ALJ's adverse credibility determination in this case is supported by substantial evidence.

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.


DATE: February 24, 2012

                     */s/George J. Limbert*
                     GEORGE J. LIMBERT
                     UNITED STATES MAGISTRATE JUDGE